**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| **DANIELLE DESIRE,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **vs.** | ) | **Case No. 24 C 2506** |
| | ) | |
| **VINEBROOK HOMES, LLC,** | ) | |
| | ) | |
| **Defendant.** | ) | |

**<u>MEMORANDUM OPINION AND ORDER</u>**

MATTHEW F. KENNELLY, District Judge:

Danielle Desire has sued her former employer, VineBrook Homes, LLC, for violations of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e-2(a)(1), and 42 U.S.C. § 1981. Desire alleges that VineBrook discriminated against her based on her race and gender by subjecting her to a hostile work environment. VineBrook has moved for summary judgment on all of Desire's claims. For the reasons below, the Court grants VineBrook's motion.

**Background**

The following facts are undisputed unless otherwise noted. Danielle Desire is a Black woman of Caribbean descent. VineBrook Homes, LLC is a real estate company headquartered in Dayton, Ohio that acquires, renovates, and leases single family homes. Desire was hired by VineBrook as an IT Project Manager in July 2021 and worked remotely from Oak Park, Illinois.

Desire's second-line supervisor (that is, her supervisor's supervisor) was David

Quine, VineBrook's Chief Technology Officer.  Desire alleges that Quine harassed her based on her race and gender from January to March 2023, when she submitted an internal complaint detailing nine incidents of harassment.  Quine and Desire largely interacted online and met only three times during her tenure at VineBrook.

In the first incident described in Desire's internal complaint, Desire created a plan to address an IT issue, and Quine changed course.  Desire alleges that "when I met with him, [he] was berating me that I did not know what I was doing in that moment, and that I was wrong."  Def.'s L.R. 56.1 Stmt., Ex. A, at 88:10–12.  Quine assigned the task to other employees, and in the second incident, he questioned the new direction he had chosen, which Desire described as Quine "flip-flopping," Def.'s L.R. 56.1 Stmt. ¶ 30, and "implying that I was the one going rogue during the meeting."  Def.'s L.R. 56.1 Stmt., Ex. A, at 94:15–16.  In the other incidents, Quine shifted his approach to certain projects (incident 3) or the agenda for a meeting, inviting a white colleague to present and overstating the involvement of Desire and others in a project (incident 4).  Quine also made changes affecting programs under Desire's purview, and she testified that these changes interfered with her ability to carry out her role (incident 5).  In addition, Desire says that Quine questioned her approach to tasks in front of a group of predominately male colleagues (incident 6), spoke to her unprofessionally about work matters (incident 7), told her she was uninformed about an issue but changed his position once a white woman joined the call (incident 8), and criticized her as she presented material to a group of colleagues (incident 9).  A common theme across these incidents is Desire's allegation that Quine berated her and "undermin[ed] [her] credibility and authority in front of her team."  Resp. to Def.'s L.R. 56.1 Stmt. ¶ 36.  Desire felt humiliated by some

of these incidents, second-guessed her own capabilities, and dreaded interacting with Quine.  Desire's internal complaint to VineBrook did not reference gender or race, and she did not complain about any other incidents involving Quine.

In addition to Desire, several other male and female employees filed internal complaints against Quine.[1]  One complainant observed that Quine treated employees objectionably regardless of race or gender.  After receiving these complaints, VineBrook recruited Desire and two other employees to develop guidelines for Quine's interactions with others.  Quine was disciplined and provided with the guidelines.  Desire does not allege any further harassment by Quine after that.

Desire considered resigning in March 2023 when she was contacted by a recruiter, but she did not do so after the guidance for Quine was formulated.  In August 2023, Quine decided to keep Desire on staff despite a reduction-in-force at VineBrook, as she was a "key contributor."  Def.'s L.R. 56.1 Stmt., Ex. B ¶ 15.

Desire also alleges that she was harassed by two other VineBrook employees, Jeremy Barrick and Yufang Vangaasbeek.  Desire alleges that Barrick harassed and berated her through instant messages sent after hours on July 13, 2023.  Barrick's messages pertained to work, and the messages did not reference race or gender.

---

[1] The parties dispute various facts related to the other employees' complaints, and VineBrook objects to the admissibility of Desire's exhibits on this point.  VineBrook argues that Exhibits 1–5 of Desire's Local Rule 56.1 Statement of Additional Material Facts were newly introduced and not properly authenticated as required by Federal Rule of Civil Procedure 56(c).  Def.'s Reply in Supp. of Mot. for Summ. J. at 1–2. VineBrook also argues that Desire relied on "at least eight" inadmissible hearsay statements.  *Id.*  Seven of these statements concern Quine, addressing other complaints against Quine and other employees who allegedly left VineBrook because of Quine.  The Court does not rule on these admissibility arguments because, even if all of this material is admissible, VineBrook would succeed on its motion for summary judgment.

Barrick asked Desire to send certain information so they could work "proactively" on a project and noted the various related tasks he would complete.  Def.'s L.R. 56.1 Stmt., Ex. 10 at 1.  Desire responded:  "Let's connect tomorrow before I head back to Chicago. If you have a preferred order of how you want the [municipalities] released, please let us know.  I'll send an invite shortly."  *Id.*  Barrick replied, "No preferred order as of current" and went on to stress the importance of timing with respect to the project in a longer message:  "I also need to hold you to your accountability to the timeframe you gave us. We're literally planning our business operations around those timeframes to ensure resident customer service, awareness, and legal notices."  *Id.* at 2.  Barrick went on to say that "it's a little frustrating to consider that you guys" haven't prepared the information, qualifying that "you guys have been pushing forward awesome" and "much better lately[,]" and "I promise it's nothing personal.  You guys are all great people.  We have to hit deadlines and deliverables presented to us though."  *Id.*  Desire did not report Barrick's messages as harassment until her exit interview five months later.

Desire additionally claims that Vangaasbeek made an inappropriate comment during a meeting in late August 2023.  The attendees were displaying computer avatars resembling themselves, and Desire added a hair wrap to her avatar.  Vangaasbeek said, "All you're missing is a bowl on your head, Danielle."  Def.'s L.R. 56.1 Stmt., Ex. A, at 190:6–7.  Desire alleges that Vangaasbeek made this comment because of her Caribbean ethnicity and race.  Vangaasbeek had also previously commented on Desire's hair on several occasions.  The parties dispute whether Desire reported this incident.

Desire began a medical leave of absence in November 2023 and never returned

4

to VineBrook.  She resigned in December 2023.

## Discussion

Summary judgment is appropriate if the movant "shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  A dispute is genuine if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party."  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  A genuine issue of material fact exists when, after drawing all reasonable inferences from the record in favor of the nonmoving party, a reasonable trier of fact could return a verdict for the nonmovant.  *Id.*

The party seeking summary judgment bears the initial burden of establishing that there is no genuine issue of material fact.  *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).  Once the movant has met this burden, the "party that bears the ultimate burden at trial must show that there is evidence creating a genuine issue of material fact."  *Insolia v. Philip Morris Inc.*, 216 F.3d 596, 598 (7th Cir. 2000).  If the party with the burden of proof cannot show that each essential element of its claim or defense is factually supported, summary judgment against that party is appropriate.  *Celotex*, 477 U.S. at 323–24.  "We apply the summary judgment standard with special scrutiny to employment discrimination cases, which often turn on the issues of intent and credibility."  *Michas v. Health Cost Controls of Ill., Inc.*, 209 F.3d 687, 692 (7th Cir. 2000).

VineBrook moves for summary judgment on each of Desire's three counts:  1) gender (or in the statute's terms, sex) discrimination under Title VII, 2) race discrimination under Title VII, and 3) race discrimination under 42 U.S.C. § 1981.  The

Court addresses the Title VII and Section 1981 claims under the same standard.  *See Paschall v. Tube Processing Corp.*, 28 F.4th 805, 814 (7th Cir. 2022) ("Claims under Title VII & § 1981 are analyzed in the same manner, and therefore case law addressing one type of claim applies to both types.").

Desire alleges that VineBrook fostered a hostile work environment when she was harassed based on her race and gender.  "[A] hostile work environment counts as an adverse action ('unlawful employment practice') within the meaning of Title VII's prohibition of race [and sex] discrimination in 42 U.S.C. § 2000e-2(a)."  *Gates v. Bd. of Educ. of Chicago*, 916 F.3d 631, 636 (7th Cir. 2019).  To establish a hostile work environment, a plaintiff must show "that (1) the employee was subject to unwelcome harassment; (2) the harassment was based on the employee's race [or other protected characteristic]; (3) 'the harassment was so severe or pervasive as to alter the conditions of employment and create a hostile or abusive working environment'; and (4) there is a basis for employer liability."  *EEOC v. Vill. at Hamilton Pointe LLC*, 102 F.4th 387, 401 (7th Cir. 2024) (quoting *Johnson v. Advoc. Health & Hosps. Corp.*, 892 F.3d 887, 900 (7th Cir. 2018)).[2]

In assessing whether harassment was so severe or pervasive that it altered the conditions of employment, courts apply an "objective and a subjective test."  *Id.*  "[T]he

---

[2] Desire presents her argument against summary judgment under the burden-shifting framework from *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973).  Pl.'s Resp. to Def.'s Mot. for Summ. J. at 2.  The Seventh Circuit does not apply this framework to hostile work environment claims.  *See, e.g.*, *Anderson v. Street*, 104 F.4th 646, 652 (7th Cir. 2024) (applying *McDonnell Douglas* burden-shifting to sex discrimination claim but not hostile work environment claim); *EEOC v. Costco Wholesale Corp.*, 903 F.3d 618, 624–25 (7th Cir. 2018) (Barrett, J.) (presenting legal framework for hostile work environment claim without reference to *McDonnell Douglas* burden-shifting); *Vill. at Hamilton Pointe*, 201 F.4th at 401–05 (same).

environment must be one that a reasonable person would find hostile or abusive, and one that the victim in fact did perceive to be so."  *Id.* (quoting *Smith v. Ne. Ill. Univ.*, 388 F.3d 559, 566 (7th Cir. 2004) (internal quotation marks omitted)).  The objective inquiry "depends on 'the severity of the allegedly discriminatory conduct, its frequency, whether it is physically threatening or humiliating or merely offensive, and whether it unreasonably interferes with an employee's work performance.'"  *Johnson*, 892 F.3d at 900 (quoting *Scruggs v. Garst Seed Co.*, 587 F.3d 832, 840 (7th Cir. 2009)); *Vill. at Hamilton Pointe*, 102 F.4th at 401.  Courts also consider the relationship between the harassing party and the plaintiff.  Harassment by a direct supervisor is considered more severe than harassment by an indirect supervisor, which in turn is considered more severe than harassment by a coworker.  *Scaife v. U.S. Dep't of Veterans Affs.*, 49 F.4th 1109, 1117 (7th Cir. 2022).

The "severe or pervasive" element of a hostile work environment claim distinguishes legally actionable harassment from "[o]ffhand comments, isolated incidents, and simple teasing" which "do not rise to the level of conduct that alters the terms and conditions of employment."  *Passananti v. Cook County*, 689 F.3d 655, 667 (7th Cir. 2012).  "Discrimination laws do not mandate admirable behavior from employers, through their supervisors or other employees."  *Johnson*, 892 F.3d at 901 (quoting *Russell v. Bd. of Trs. of Univ. of Ill. at Chicago*, 243 F.3d 336, 343 (7th Cir. 2001)).  Still, conduct may be "a far cry from hellish" yet still severe or pervasive enough to affect the conditions of employment.  *Id.*  "Whether harassment was so severe or pervasive as to constitute a hostile work environment is generally a question of fact for the jury," but summary judgment is appropriate where "no reasonable jury could find the

7

conduct at issue severe or pervasive."  *Id.*

In this case, no reasonable jury could find that "the harassment was so severe or pervasive as to alter the conditions of employment and create a hostile or abusive working environment."  *Id.* at 900.  The Court considers in the aggregate the incidents involving Quine, Barrick, and Vangaasbeek.  *Scaife*, 49 F.4th at 1118 ("[A]ll instances of harassment by all parties are relevant to proving that an environment is sufficiently severe or pervasive.").

The Court assumes that the environment at VineBrook was subjectively offensive to Desire.  Still, the conduct was not objectively severe or pervasive enough to alter the conditions of her employment.  Even taken together, Quine's conduct, Barrick's messages, and Vangaasbeek's comment do not clear the severity threshold.  Quine's conduct and Barrick's messages pertained to work-related matters and did not involve race- or gender-based slurs or express animus.  A reasonable person very well might consider this conduct unprofessional, abrasive, or perhaps abusive.  But "having supervisors who are short tempered, hostile, unfairly critical, and disrespectful, does not amount to objectively offensive, severe, or pervasive conduct."  *Hambrick v. Kijakazi*, 79 F.4th 835, 843 (7th Cir. 2023) (quoting *Abrego v. Wilkie*, 907 F.3d 1004, 1015 (7th Cir. 2018) (internal quotation marks omitted)).  And although Desire reasonably believed Vangaasbeek's comment was based on her ethnicity and race, isolated race-related remarks do not rise to the level of severe harassment that alters the conditions of employment.  *See, e.g.*, *Racicot v. Wal-Mart Stores, Inc.*, 414 F.3d 675, 678 (7th Cir. 2005) (holding that plaintiff did not demonstrate severe or pervasive environment where colleagues "used vulgar language in her presence, occasionally cursed at her, yelled at

her, and made isolated comments about older women in the workplace").  In addition, because Vangaasbeek was Desire's coworker, her purportedly race-based comments are not given as much weight as similar comments from a supervisor or indirect supervisor.  *See id.*

Other evidence affirms that Desire did not face conduct that was objectively severe or pervasive enough to alter the conditions of her employment.  Desire complained of nine interactions with Quine between late January and early March 2023, as well as the Barrick messages and Vangaasbeek comment in July and August 2023. Though "conduct that is not particularly severe but that is an incessant part of the workplace environment" may be pervasive, a frequency of eleven incidents over the course of approximately seven months (or even nine incidents over six weeks) does not render the alleged harassment pervasive given the totality of circumstances in this case. *See Jackson v. County of Racine*, 474 F.3d 493, 499–500 (7th Cir. 2007) (daily inappropriate touching and sexual comments could allow a reasonable jury to find pervasive harassing conduct); *Baskerville v. Culligan Int'l Co.*, 50 F.3d 428, 431 (7th Cir. 1995) ("A handful of comments spread over months is unlikely to have so great an emotional impact as a concentrated or incessant barrage.").  Desire does not contend that any of the incidents were physically threatening or humiliating, though the Court acknowledges that she was offended and, in some cases, humiliated.  Finally, the incidents did not unreasonably interfere with Desire's work performance.  *See Scaife*, 49 F.4th at 1117–18 (holding that harassment was not severe or pervasive and noting that employee "always worked at or above the legitimate expectations of her employer").  Although Desire alleges that the harassment undermined her credibility and authority at

9

work, she nevertheless was considered a "key contributor" and VineBrook retained Desire during a reduction-in-force that occurred in August 2023. Def.'s L.R. 56.1 Stmt., Ex. B ¶ 15.

In sum, Desire has not offered evidence that would permit a reasonable jury to find that she experienced severe or pervasive harassment that altered the conditions of her employment. Even if one considers all of the instances of alleged harassment together and views the facts in the light most favorable to Desire, her claims cannot succeed.

### Conclusion

The Court grants VineBrook's motion for summary judgment [dkt. 44] and directs the Clerk to enter judgment stating: Judgment is entered in favor of defendant VineBrook Homes, LLC and against plaintiff Danielle Desire.

_____
MATTHEW F. KENNELLY
United States District Judge

Date: September 17, 2025